Bartlett *v.* Bartlett.

---

# BARTLETT *v.* BARTLETT.

A testator by his will provided that his wife should be supported by the defendant, and that if she chose to reside with one of her daughters, he should support her there; the daughters at the time were residing in country towns, but one of them afterwards removed to a city, where the expenses of living were

much higher, and the plaintiff went to reside with her—*Held,* that the intention of the testator was that his widow should be supported at an expense equal to what it would be in the towns where the daughters then resided, and that the defendant was not liable to support her in a city where the cost of living was much higher.

DEBT, upon a bond, conditioned for the support of Azubah Bartlett, agreeably to the will of her husband, William Bartlett, deceased. The clauses of the will relating to the subject are as follows :

" I give and bequeath to my beloved wife, Azubah, the use of one half of the dwelling-house in which I now live ; also the use of the whole of the furniture, which I shall have in the said house, beds and bedding, &c. ; also to be supported from the avails of the farm on which I now live, with good and sufficient meats, drink, clothing, lodging, physicians and nursing, and all other necessaries fit for a person in her condition ; to have and enjoy the same during her natural life, and at her decease, to have a decent, christian burial, and a set of suitable grave stones, the expense to be paid from the avails of said farm."

" And I further direct, that if my said wife shall, any time during her life, choose to live with either of her daughters, she shall have the privilege of so doing, and my son Elijah, who has said farm, shall support her at said daughter's."

" I also give and bequeath to my son Elijah, the whole of my real estate, situated in said Winchester, described in a deed which I now hold of the same, with the buildings and appurtenances thereunto belonging, to the said Elijah, his heirs and assigns, forever ; also all my personal estate not otherwise hereby disposed of, together with my library of books, desk and clock, on condition that he pay and perform as hereinafter directed."

The subsequent provisions of the will required Elijah to pay his debts and legacies, but had no reference to his widow.

It appeared that the testator was a farmer, and resided in Winchester, N. H. That for fifty years before his death he resided in Newfane, Vt., and Winchester, and before that time he resided in Northborough, Mass., and he was never engaged in any other business than farming. He left two daughters, who were married, and resided in Newfane, Vt., and one daughter, unmarried, who resided in Westborough, Mass., at the time of his decease.

At the testator's decease, he resided in the same house with his son Elijah, and his widow continued to reside with him about seven years, and then resided about four years with Mrs. Whitney, a daughter residing at Newfane, Vt., who agreed with her brother Elijah to support, nurse, and properly take care of her, for $75 per year.

In July, 1851, Mrs. Bartlett removed to Worcester, to reside with her youngest daughter, previously resident at Westborough, and has since resided there with her. The expenses of living at Worcester being much higher than at Winchester, where the testator resided, or at Newfane, or Westborough, where his daughters resided at his decease, the amount claimed in this action greatly exceeds the expense of a like support at the last named places; and upon a hearing in chancery, after a default entered in this action, the question arises, whether the plaintiff is entitled to recover for her support the actual cost at Worcester, or only the cost of such support in Winchester, or other farming towns.

*Wheeler* and *Faulkner*, for the plaintiff.

The intention of the testator is to be determined, either by the express terms of the language which he used, or by that language taken in connection with the circumstances under which it was used. By either of these rules, the plaintiff would be entitled to recover the cost of her support in Worcester, in such style as persons of her condition in life are accustomed to maintain.

I. The express language of the will is, "And I further direct, that if my said wife shall, any time during her life, choose to live with either of her daughters, she shall have the privilege of so doing, and my son Elijah, who has said farm, shall support her at said daughter's." Language more favorable to the plaintiff's claim could not well be used. There is no limitation as to time, to any particular place, or to expense.

II. If the court will examine the circumstances under which this language was used, for the purpose of discovering whether any limit can be found to its comprehensiveness, they will fail to discover any such controlling circumstances.

The circumstances upon which the defendant relies, are that the testator was a farmer, and that his daughters resided in farming towns at the time of his decease; and, from these circumstances, he asks the court to infer that it was probably the intention of the testator that his wife should always live in some farming town.

But the plaintiff contends that these circumstances will not warrant such inference in opposition to the express terms of the language of the will. By the same rule of construction, the defendant might claim to be relieved of his burden after his mother had reached the age of three score years and ten, on the ground that the testator probably could not have expected his wife to live beyond that age, although she has, in fact, reached the age of ninety-five. And, indeed, if it could be shown that the plaintiff was, at that time, in feeble health, it might be argued, on the same ground, that, although the testator used the expression, "during her life," he could not, under the circumstances, have expected her to live more than six months, or a year.

So, too, since the price of living has risen in Winchester since the execution of the will, the defendant might, on the same ground, ask the court to relieve him from the excess.

III. The circumstances upon which the plaintiff relies, in.

18

addition to the express terms of the language used, are, that the daughter, with whom she now resides, was then unmarried, and it must be presumed that the testator took into consideration the probability of her marrying, and removing to her husband's residence, or to whatever place he might choose to remove. He must, also, be presumed to have taken into consideration the fact that his two married daughters, residing at Newfane, were liable, at any time, to be removed, whenever the convenience or interest of their husbands might require. Yet, notwithstanding this, he expressly provides that his wife should have the privilege of living with either of her daughters, and the defendant should support her " at said daughter's."

IV. It is evident, from the provisions of the will, that the testator did not intend that the plaintiff should be left at the mercy of the defendant. He evidently intended to protect her from the misery which is too often endured by aged and infirm parents, supported under the same roof, by unwilling children, who are bound to support them no where else. But if the construction for which the defendant contends should be adopted, this wise intention may be effectually defeated. The plaintiff, for good reasons, doubtless, has elected to reside with her daughter at Worcester, but, if she cannot be supported there, on account of the increased expense, she may be compelled to reside with the defendant, subject to all the inconveniences against which the testator evidently intended to guard her.

V. If the true construction of the language used is, under the circumstances, at all doubtful, it should be taken most strongly against the obligor. With full power to limit his liability to the price of living at Winchester, if that had been his understanding of the testator's intention, he bound himself, by the bond now in suit, for the support of the plaintiff agreeably to the will of his deceased father.

VI. There is no ambiguity in the language of the testator which would warrant the court in resorting to evidence

*aliunde* to explain it; and no analogy can be traced between this and the cases of *Stanley* v. *Stanley*, 2 N. H. Rep. 364 ; *Howe* v. *Howe*, 10 N. H. Rep. 88, and *Holmes* v. *Fisher*, 13 N. H. Rep. 9.

*Bennett*, for the defendant.

We desire only to refer the court to the case of *Holmes* v. *Fisher*, 13 N. H. Rep. 9. We contend that the plaintiff could not make the duty of supporting her more onerous than it was at the time of her husband's decease, or at the time of his making the will.

EASTMAN, J. What construction shall be given to the will of William Bartlett? is the only question raised by this case.

The will provides that the wife of the testator shall have her support during her life, from the avails of his farm ; which farm the testator gave to his son, Elijah.

It also provides that if the testator's wife should at any time choose to live with either of her daughters, she should have the privilege of so doing, and Elijah, who had the farm, was required to support her at her daughter's. ·

At the time of the testator's decease, he left three daughters ; two who were married and resided in Newfane, Vt., and one, unmarried, residing in Westborough, Mass. One of the daughters has since removed to Worcester, Mass., where the expenses of living are much greater than at her previous residence, and her mother, having gone to reside with her, claims of her son the cost of her support at Worcester.

The defendant being liable by his bond to support the plaintiff according to the provisions of the will, the question is, was it the intention of the testator that Elijah should support his mother at any place where his daughters might chance or choose to reside, whatever might be the expense, or did he intend simply that she should be supported at such

rates as would be required at Winchester, Newfane, or Westborough, where he and his daughters then resided?

In regard to this question, we all think that there can be but very little, if any, doubt. Neither do we think that there is anything in the express terms of the will which conflicts with what we regard as the intention.

In giving a construction to a will, the intention of the testator is the first thing to be considered. But in ascertaining what the intention is, we properly enough look at the circumstances that surrounded him when he made the will.

The testator, in this case, was a farmer, and his daughters were residing in places where the expenses of living were not great; and it can hardly be supposed that, when he made his will, he contemplated any important change of residence, or material increase in their expenditures in living. If the principle contended for by the plaintiff be correct, then the son would be obliged to support the mother wherever the daughter might reside, and however great might be the expense. If the daughter should reside in Boston, or New York, or New Orleans, still he would be compelled to render the support, and the farm itself might soon be required for her support.

Now we think that the testator could not have intended that his will should receive any such construction, but that his meaning and intention must have been, that his widow should be supported at his daughter's, where they then resided, or at some similar place, where the expenses would not be materially increased.

The action, then, cannot be maintained for the cost of her support at Worcester; but for such sum as it would cost to support her at Westborough and Newfane, and other similar places.

According to the provisions of the case, the plaintiff must have execution for such sum only as it would cost to support her at Winchester, and other farming towns.